WILLIAM TOMINO, Individually )
  and trading as Tomino's Deli, )  Civil Action
                         )  No. 08-cv-06018
          Plaintiff )
                         )
      vs. )
                         )
CITY OF BETHLEHEM; )
JOHN R. LEZOCHE, Individually )
  and as zoning Officer for the )
  City of Bethlehem; and )
JOHN DOES 1-100, )
                         )
         Defendants )

\*    \*    \*

APPEARANCES:

      SHERYL L. BROWN, ESQUIRE
          On behalf of Defendants City of Bethlehem
          and John R. Lezoche

      THOMAS K. SCHINDLER, ESQUIRE
          On behalf of Plaintiff

\*    \*    \*

O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

      This matter is before the court on Defendants, City of
Bethlehem and John R. Lezoche's Partial Motion to Dismiss
Plaintiff's Complaint, which motion was filed together with a
memorandum of law in support on March 5, 2009. Plaintiff William
Tomino's Brief in Opposition to Defendants', City of Bethlehem
and John Lezoche's Partial Motion to Dismiss Plaintiff's

Complaint was filed March 30, 2009. For the reasons articulated in this Opinion, I grant in part and deny in part defendants' motion. Specifically, I dismiss Counts I-IV against defendant Lezoche. I dismiss from the Complaint the due process claim in Count I, and Counts II and III in their entirety, against defendant City of Bethlehem. Finally, I give plaintiff until April 20, 2010 to amend his Complaint in accordance with this Opinion.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because the events giving rise to plaintiffs' claims allegedly occurred in Bethlehem, Northampton County, Pennsylvania, which is within this judicial district.

## PROCEDURAL HISTORY

Plaintiff initiated this action on December 30, 2008 by filing a four-count civil Complaint against defendant City of Bethlehem ("the City"); defendant John R. Lezoche, individually and as Zoning Officer for the City of Bethlehem; and defendants "John Does 1-100". Plaintiff's claims arise from actions allegedly taken by defendants in the context of plaintiff's operation of Tomino's Deli in Bethlehem, Pennsylvania.

Count I of the Complaint is styled "Violation of The Civil Rights Act, 42 U.S.C. § 1983". It alleges violations of Article IV, § 2 and the Fourteenth Amendment of the United States Constitution against all defendants. Count II alleges that all defendants conspired to deprive plaintiff of rights, in violation of 42 U.S.C. § 1985. Count III sets forth a claim of civil conspiracy against all defendants, and Count IV sets forth a claim of abuse of process against defendant Lezoche. Both Counts III and IV charge violations of Pennsylvania state law.[1]

On March 5, 2009, defendants City and Lezoche filed the within motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On March 19, 2009, plaintiff filed a motion for enlargement of time to respond to the motion. On March 30, 2009, plaintiff filed its brief in opposition to the motion. By Order dated May 21, 2009, I granted plaintiff's motion for enlargement of time and deemed plaintiff's brief in opposition to have been timely filed. Hence this Opinion.

## STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted". A 12(b)(6) motion requires the court to

---

[1] Defendants' motion to dismiss notes that plaintiff fails to plead whether the "civil conspiracy" claim is pursuant to 42 U.S.C. § 1983 or Pennsylvania state law, and substantively addresses both. Plaintiff's brief in opposition makes clear that Count III is a claim for civil conspiracy under Pennsylvania law. Therefore, I treat it as such.

examine the sufficiency of the complaint.  <u>Conley v. Gibson</u>,
355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957)
(abrogated in other respects by <u>Bell Atlantic Corporation v.
Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

     Ordinarily, a court's review of a motion to dismiss is
limited to the contents of the complaint, including any attached
exhibits.  <u>See</u> <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1462
(3d Cir. 1992).

     Except as provided in Federal Rule of Civil
Procedure 9, a complaint is sufficient if it complies with
Rule 8(a)(2).  That rule requires only "a short and plain
statement of the claim showing that the pleader is entitled to
relief" in order to give the defendant fair notice of what the
claim is and the grounds upon which it rests.  <u>Twombly</u>,
550 U.S. at 555, 127 S.Ct. at 1964, 167 L.Ed.2d at 940.

     Additionally, in determining the sufficiency of a
complaint, the court must accept as true all well-pled factual
allegations and draw all reasonable inferences therefrom in the
light most favorable to the non-moving party.  <u>Phillips v. County
of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008); <u>Worldcom, Inc. v.
Graphnet, Inc.</u>, 343 F.3d 651, 653 (3d Cir. 2003).  Nevertheless,
a court need not credit "bald assertions" or "legal conclusions"
when deciding a motion to dismiss.  <u>In re Burlington Coat Factory
Securities Litigation</u>, 114 F.3d 1410, 1429-1430 (3d Cir. 1997).

A complaint may not be dismissed merely because it appears unlikely that plaintiff can prove those facts or will ultimately prevail on the merits. Phillips, 515 F.3d at 231. Nevertheless, Rule 8(a)(2) requires a "showing" rather than "a blanket assertion of an entitlement to relief". Without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice", but also the "grounds" on which the claim rests. Phillips, 515 F.3d at 232.

In considering whether the complaint survives a motion to dismiss, both the District Court and the Court of Appeals review whether it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Twombly, 550 U.S. at 555, 127 S.Ct. at 1969, 167 L.Ed.2d at 944 (quoting Car Carriers, Inc. v. Ford Motor Company, 745 F.2d 1101, 1106 (7th Cir. 1984) (emphasis in original); Haspel v. State Farm Mutual Auto Insurance Company, 241 Fed.Appx. 837, 839 (3d Cir. 2007).

Dismissal is proper if a party fails to allege sufficient factual matter which, if accepted as true, could "state a claim to relief that is plausible on its face". Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949,

173 L.Ed.2d 868, 884 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949)).

FACTS

Based upon the averments in plaintiff's lengthy Complaint, which I must accept as true under the foregoing standard of review, the pertinent facts are as follows.

In December 1997, plaintiff bought a barber shop and tailor shop located at 1037 Main Street, Bethlehem, Pennsylvania ("the Tomino property") with the intent to change it to a delicatessen. The Tomino property is located in an R-M Residential District under the provisions of the Zoning Ordinance of the City of Bethlehem, and is located in a neighborhood which is a mix of multi-family residential and commercial uses, with a high percentage of student housing apartments.

The Tomino property is an irregularly shaped 25'x100' lot with a one-story building, with dimensions of 19'x55. It has been used consistently for commercial use for over 76 years, including as a barber shop, tailor shop, Pott's Hot Dogs, an insurance agency, and a marriage counselor's office. The property is unsuitable for use as a residence because of its configuration and layout.

After plaintiff's application for a building permit was denied by the Zoning Officer, plaintiff appealed to the Zoning Hearing Board of the City of Bethlehem ("Board"), and applied for

a special exception to use the Tomino property as a delicatessen. On April 22, 1998, after a hearing, the Board granted plaintiff a special exception to operate a delicatessen at the property.

The special exception was subject to the following conditions: "Hours of operation (defined as being when the doors are open to the public) shall be limited to: Monday through Friday: 10:30 a.m. to 6:00 p.m.[;] Saturday: 11:00 a.m. to 6:00 p.m.[; and] Sunday: closed."[2]  The special exception also provided that "No grill or any cooking device requiring an exhaust fan shall be used", "No pinball machines, video, or arcade games shall be permitted", and "No cigarette or lottery ticket sales shall be permitted".[3]

Plaintiff opened Tomino's Deli in January 1999.  The deli primarily sells sandwiches, potato chips and drinks.  It is located across the street from Moravian College and is frequented by college students.  Since his purchase of the Tomino property, plaintiff has been a good neighbor.

In September 2001, plaintiff began taking telephone orders for sandwiches after the deli was closed to the public for the day.  No customers enter the store after closing in connection with those orders, and plaintiff personally delivers the sandwiches.  Plaintiff took telephone orders and delivered

---

[2]     Complaint, paragraph 24.

[3]     Complaint, paragraph 25.

sandwiches for nearly two years in this manner. Bethlehem's former zoning officer, Stephen L. Chanitz, testified under oath in a separate proceeding that the delivery service did not generate noise, traffic, or patrons.

In April 2004, defendant Lezoche, the zoning officer for the City, purchased 930 Monocacy Street, Bethlehem, Pennsylvania (the "Lezoche property"), for his daughter. The Lezoche property is in the neighborhood of the Tomino property. Defendant City, through defendant Lezoche and others, began to conduct inspections of Tomino's Deli.

On November 11, 2003, defendant Lezoche delivered a Cease and Desist Order to Tomino's Deli for an alleged violation of Article 1323.04(c) of the Zoning Ordinance: "Expanding a lawful non-conforming use (Delicatessen) by offering delivery service between the hours of 12:00 am and 3:00 a.m on Sunday mornings" and "Installing table and seating outside the Deli for patrons to consume food outside and on the property of the Deli owner, 1035-1037 Main St."[4] Defendants knew that plaintiff had been making deliveries for at least two years prior to the Cease and Desist Order.

In January 2004, an anonymous complaint was allegedly received from a citizen claiming that a customer ordered and paid for a sandwich at Tomino's, then noticed a roach behind the

---

[4]    Complaint, paragraph 40.

counter and refused to accept the sandwich.  Defendant Lezoche, personally or through an unknown third party, made this false and unsubstantiated complaint to harass plaintiff.  On January 12, 2004, purportedly in response to the anonymous complaint, a representative of the City Bureau of Health inspected Tomino's Deli and concluded, in a written report, that "No roaches or evidence of was found."[5]

In June 2004, without authority, defendant Lezoche issued a Cease and Desist order, seeking to stop Tomino from taking orders and delivering sandwiches after 6:00 p.m.  On June 23, 2004, the Board heard plaintiff's appeal challenging the Cease and Desist order.  By letter dated June 29, 2004, Lezoche, who was not a member of the Board, advised plaintiff that his appeal was denied.

On December 3, 2005, Jimmy Smith, the City Street Supervisor, came across the street from the deli with a police officer and watched as plaintiff plowed snow around the property. On December 29, 2005, an employee from the City Housing Department went to the deli and stated that he was looking at plaintiff's truck, and that he "wanted tires just like his".[6]

On January 13, 2006, defendant Lezoche went into the deli, ordered a sandwich, and advised plaintiff that he was "just

---

[5]     Complaint, paragraph 46.

[6]     Complaint, paragraph 51.

-9-

checking".[7]  On January 26, 2006, defendant Lezoche went into the deli and asked plaintiff whether the wall was real brick or paneling, and talked about the renovation work that plaintiff had done.  On January 27, 2006, defendant Lezoche went into the deli again and said how much more room plaintiff had in there.  Defendant Lezoche went into the deli again on February 28, 2006, examining the deli for possible violations.

On February 2, 2006, defendant Lezoche went into the deli at 5:50 p.m., placed an order, and talked about the stones in the back of the Tomino property.  He advised plaintiff that there is a ten-foot setback.  Plaintiff replied that he was permitted to lay stone up to the property line.  On February 3, 2006 defendant Lezoche called from City Hall and talked about code violations of stones, asked what kind of stones they were and what plaintiff's plans were.  He advised plaintiff that he could not expand parking without "go[ing] to Zoning", but told plaintiff that he could put stones up to the property line.[8]

That same day, Tracy Samuelson, Assistant Director of the Bethlehem Planning Bureau, went into the deli, placed an order, and began discussing the stoning of the parking lot, telling plaintiff that it must be paved.  Plaintiff told director

_____

[7]     Complaint, paragraph 52.

[8]     Complaint, paragraphs 58-59.

Samuelson that he had obtained approvals one and a half years prior.

On February 4, 2006, defendant Lezoche went into the deli and asked if plaintiff's neighbor had talked to him, to which plaintiff responded "no, what neighbor?"[9]  Defendant Lezoche shook his head and did not answer.

On February 7, 2006, Stewart Cochran of the City Health Department went in and said that he heard plaintiff was doing work, and "felt bad that Tomino did not call".[10]  On February 11, 2006, defendant Lezoche went into the deli again and advised plaintiff that he was getting a Cease and Desist order, and said that plaintiff would need to submit a new floor plan because he had "moved things around".[11]  Defendant Lezoche said that if plaintiff had come to him first, they could have "worked it out" because "he works out problems with people".[12]

On February 14, 2006, defendant Lezoche wrote to plaintiff and advised him that a land development review was required for his proposed expanded parking area.  He also stated that a construction permit was required for plaintiff's change in floor plan for any new construction, such as a new wall or new

---

[9]     Complaint, paragraph 62.

[10]    Complaint, paragraph 64.

[11]    Complaint, paragraph 66.

[12]    Complaint, paragraph 67.

openings. The letter also advised plaintiff that if no new construction took place, then a scaled drawing of the revised delicatessen must be submitted for health and fire department review. According to the letter, "[f]ailure to respond to his office within 5 days concerning the above will result in a 'Cease and Desist'."[13]

By letter dated February 22, 2006, plaintiff's attorney Robert A. Nitchkey, Jr., Esquire, responded on plaintiff's behalf to defendant Lezoche's February 14, 2006 letter. Attorney Nitchkey advised defendant Lezoche that plaintiff had made no interior structural changes to the deli; that plaintiff had not proposed any additional parking at that time; that plaintiff had submitted, and secured approval, plans for additional parking in 2001; and that plaintiff recently stoned a portion of the rear yard with the intent of pursuing the approval previously secured. Attorney Nitchkey requested information concerning any additional necessary steps so that plaintiff could continue to be compliance with municipal requirements.

On February 24, 2006, health inspector Stewart Cochran went into the deli. Plaintiff asked Mr. Cochran if he needed a new floor plan because the equipment had been moved, as stated by defendant Lezoche's letter. Mr. Cochran asked plaintiff if his equipment was on wheels. Plaintiff advised him that it was, and

---

[13]     Complaint, paragraph 71.

Mr. Cochrain advised him that because it was not permanent, and with no new walls, no floor plan was needed.  Mr. Cochran also concluded on the official report form of February 24, 2006 that the re-ordering of Tomino's deli complied with code.

On May 24, 2006, defendant Lezoche responded in writing to Attorney Nitchkey's February 22, 2006 letter as follows:

> In response to your letter of February 22, 2006 regarding the above property, Code Enforcement and the Health Bureau have been in contact with Mr. Tomino, and he has received the necessary approvals.
>
> However, the rear parking lot issue remains to be resolved.  Mr. Tomino went before the Zoning Hearing Board on March 3, 2002 and was granted a special exception to expand the delicatessen use and parking lot.  Since Mr. Tomino failed to act on the expansion and construction of both within a year's time, the decision of the Zoning Hearing Board becomes invalid.  (Article 1325.09 of the Zoning Ordinance.)  Mr. Tomino must, again request an appeal for a special exception for his parking lot.  (Article 1308.02.c.1 refers to 1307.02.c2)
>
> Under the Subdivision and Land Development Ordinance and the Zoning Ordinance off-street parking requirements (Article 1319.02), Mr. Tomino must submit a Land Development (Survey) Plan for the Planning and Zoning Bureau review for the proposed parking area.
>
> Since Mr. Tomino has covered most of his rear lot with stone, no parking is permitted in this area until all of the above is satisfied.  The existing four (4) parking spaces immediately adjacent to W. Laurel Street must be paved and properly lined (Article 1319.02.h).  Parking of more than 4 vehicles has been observed on the lot and must cease immediately.[14]

---

[14]     Complaint, paragraph 84.

On August 14, 2007, defendant Lezoche appeared unannounced at Tomino's Deli at 12:15 p.m.  On August 16, 2006, Scott Steiner of the City's Health Bureau showed up unannounced at the deli at 4:33 p.m. and said nothing to plaintiff nor his employees.  Thereafter, a written "Notice of Violation - Immediate Response is Required" was issued advising plaintiff that Mr. Steiner's inspection of the Tomino property on August 16, 2006 revealed an alleged condition that required "immediate corrective action" and represented "violations of the Codified Ordinances of the City of Bethlehem."[15]  The alleged violations noted were "Weeds".

Also on August 16, 2006, defendant Lezoche filed and verified a complaint against plaintiff on behalf of the City of Bethlehem in the District Court for Magisterial District No. 03-2-01, Northampton County.  In that complaint, the City sought a judgment against plaintiff Tomino for $2,000.00 plus costs for failure to appear before the Zoning Board for use of his land as a parking lot after being given a cease and desist order dated July 6, 2006.

In an inter-office memorandum dated October 19, 2006 from Robert J. Donchez, a member of Bethlehem City Council, to defendant Lezoche, Mr. Donchez wrote:

---

[15]     Complaint, paragraph 87.

> Per our previous telephone conversation, I would
> appreciate an update regarding the problem with
> water runoff from the parking lot located next to
> Tomino's Deli at 1037 Main Street that goes into
> the property at 1027 Main Street owned by Elmer
> Dunbar.
>
> It is my understanding that the Magistrate
> rejected the recent appeal. I would like to know
> what action, if any, will be taken by the City to
> correct this issue that is causing a problem to
> the Dunbar residence.[16]

Mr. Donchez forwarded copies of the October 19, 2006 memorandum

to Mayor Callaham, T. Hanna, Members of Council, C. Spadoni and

E. Dunbar.

In response, defendant Lezoche transmitted an inter-

office memorandum dated October 27, 2006 to Mr. Donchez, advising

him as follows:

> The legal bureau is currently reviewing the
> subject matter and is considering an "injunction"
> against Mr. Tomino. You will be informed what
> course of action the legal bureau will take as
> soon as "legal" makes a decision.
>
> In other issues on the property, Mr. Tomino has
> ignored the zoning hearing board decision which
> did not allow the expanded hours of operation and
> delivery of sandwiches after Midnight on weekends.
> He has commenced with that operation. The legal
> bureau is currently reviewing my request for an
> "injunction" on that issue. On another zoning
> matter, a commercial piece of equipment (cement
> mixer) is currently being stored on his illegal
> parking lot. Finally, a recent complaint is filed
> claiming a "no license plate" vehicle is currently

---

[16]     Complaint, paragraph 91.

> on his illegal parking lot. Housing supervisor
> Mike Palos will investigate this complaint.[17]

Defendant Lezoche forwarded copies of the October 27, 2006

memorandum to Tony Hanna, Darlene Heller and Members of Bethlehem

City Council.

On January 10, 2007, Lou Malpedo, Housing Inspector for

the City of Bethlehem, transmitted a "Final Notice" to plaintiff

advising him as follows:

> According to our records, you are the owner of the
> property located at the above referenced address.
>
> Article 1733 Sub-section PM-302.8 makes it
> unlawful to abandon and/or store any unregistered,
> not currently inspected, unlicensed, junked, or
> inoperable motor vehicle on private property
> longer than 48 hours from receipt of notification
> of such violation.
>
> Exception: A vehicle of any type is permitted to
> undergo repair, including body work provided that
> such work is performed inside a structure or
> similarly enclosed area designed and approved for
> such purpose, that is an accessory use, incidental
> to the dwelling as defined in Article 1302.2 of
> the City of Bethlehem Zoning Ordinance #2210. All
> wrecked car parts must not be stored on any
> private property in clear view of the public right
> of way.
>
> Any vehicle undergoing repair, including body
> work, shall be registered to the owner of the
> property where such work is being done or
> registered to the lawful resident/tenant of the
> property where the work is being done.
>
> Please remove the following vehicle(s) in the time
> stated:

---

[17]    Complaint, paragraph 93.

Blue Hyundai (plate 6LA0750) and Plymouth Horizon (plate DLE1501).

If the owner of an abandoned and/or junked motor vehicle cannot be located or does not remove the vehicle within 48 hours, the City of Bethlehem will issue citations which range from $200.00 to $1,000.00 per day that the violation exists.[18]

## CONTENTIONS OF THE PARTIES

### Defense Contentions

Defendants Lezoche and City of Bethlehem contend that all claims against defendant Lezoche (Counts I-IV) should be dismissed because they were brought outside the applicable statute of limitations. They also request that the following claims be dismissed against the City: Count I, to the extent that it states claims against the City under Fourteenth Amendment (equal protection and due process); Count II (§ 1985 conspiracy); and Count III (state-law civil conspiracy). Defendants do not challenge Count I against the City to the extent that it pleads a claim for relief under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

First, regarding Counts I-IV against defendant Lezoche, defendants aver that the applicable statute of limitations for all claims in this matter is two years and that plaintiff's claims accrued when he knew or had reason to know of the injury

---

[18]     Complaint, paragraph 95.

-17-

on which his claims are based. Defendants contend that according to the facts pled in the Complaint, the most recent action involving defendant Lezoche was an interoffice memorandum dated October 27, 2006 responding to a request from a city councilman regarding the status of issues involving plaintiff.

Defendants aver that prior to that memorandum, the most recent actions involving defendant Lezoche were the August 16, 2006 filing of a complaint against plaintiff on behalf of the City for failure to appear before the Board and using his land as a parking lot after being given a cease and desist order.

Defendants thus aver that, according to the Complaint, the most recent actions involving defendant Lezoche were on August 16, 2006 and October 27, 2006. They contend that because this lawsuit was filed December 30, 2008, more than two years after any alleged wrongful activity by defendant Lezoche, plaintiff's claims against defendant Lezoche were brought outside the statute of limitations and therefore should be dismissed with prejudice.[19] Specifically, regarding Count IV, the abuse of process claim, defendants aver that that claim accrued with the filing of the August 16, 2006 complaint.

---

[19]     Alternatively, defendants contend that if the § 1985 conspiracy claim in Count II is dismissed against the City, as discussed below, it should also be dismissed against defendant Lezoche. Specifically, they contend that once the City is dismissed, defendant Lezoche would be the only remaining alleged conspirator and § 1985 requires that two or more people participate in the conspiracy. Thus, defendants aver that if the City is dismissed, plaintiff cannot state a claim for conspiracy against defendant Lezoche because he cannot conspire with himself.

Second, defendants contend that plaintiff's constitutional claims against the City, as set forth in Count I, should be dismissed. Defendants aver that plaintiff's procedural due process claim fails because Pennsylvania affords a full judicial mechanism by which plaintiff could have challenged the local officials' administrative decisions. They contend that because each of the notices, cease and desist orders, and complaints issued against plaintiff by the City contained reasonable procedural processes by which he could have challenged them, his procedural due process claim fails regardless of whether he chose to pursue those remedies.

Defendants further aver that the equal protection claim set forth in Count I should be dismissed because the Complaint fails to allege facts supporting a conclusion that he was similarly situated with other property owners, but was treated differently. Defendants contend that plaintiff's bald assertion that defendants engaged in practices of "treating him differently than other similarly situated property owners"[20] does not satisfy the Twombly pleading standard because the factual allegations set forth in the Complaint refer only to plaintiff and his own property, not that of others. Defendants therefore assert that plaintiff has failed to plead facts to support an equal protection claim under a "class of one" analysis, and therefore

---

[20]    Complaint, paragraph 101.

Count I should be dismissed to the extent that it alleges an equal protection claim against the City.

Third, defendants contend that the § 1985 conspiracy claim set forth in Count II should be dismissed against the City because a municipality may not be held liable pursuant to § 1985 under the doctrine of respondeat superior, and because a local government cannot be a conspirator. Defendants assert that state and local entities are not "persons" for purposes of § 1985, and therefore the City is excluded from liability.

Finally, defendants likewise contend that Count III should be dismissed against the City because the City cannot be a conspirator; a conspiracy requires two or more persons; and defendant Lezoche cannot be a sole conspirator. Moreover, defendants aver that the Complaint does not plead with sufficient specificity that defendants agreed to any plot to deprive plaintiff of rights.[21]

### Contentions of Plaintiff

First, regarding the statute of limitations in this action, plaintiff agrees that the applicable statute of limitations for each claim against defendant Lezoche is two years, and that each statute of limitations begins to run when

---

[21]     As discussed above at footnote 1, defendants address Count III alternatively under § 1983 and Pennsylvania law because the Complaint does not specify under which the claim is brought. Because plaintiff's response indicates that Count III is brought pursuant to Pennsylvania state law, I do not address defendants' contentions regarding § 1983 on this Count.

plaintiff knows or has reason to know of the injury on which the action is based.[22]  However, plaintiff contends that each claim against defendant Lezoche is timely under the continuing wrong doctrine.  Specifically, plaintiff avers that defendant Lezoche's personal interests acted as the impetus for the actions of not only defendant Lezoche individually, but also the City.

Therefore, plaintiff contends that "It is an absolutely reasonable inference" that the January 10, 2007 "Final Notice" sent to plaintiff by Lou Malpedo was prepared and sent "at the behest of Lezoche or at the very least, to further the aims established by Lezoche".[23]  Accordingly, plaintiff avers that, under the continuing wrong doctrine, the two-year statute of limitations was triggered by the sending of the Final Notice by Lou Malpedo on January 10, 2007, and therefore this lawsuit, filed December 30, 2008, is timely.

Second, regarding Count I against the City, plaintiff contends that his procedural due process claim is proper because he is not challenging a particular land use decision or a particular ruling by the health department, but rather a pattern of "insidious harassment and selective law enforcement against Plaintiff in order to cleanse the neighborhood of business activity that defendant Lezoche finds personally unattractive,

---

[22]    Plaintiff's brief in opposition, pages 14-15.

[23]    Plaintiff's brief in opposition, page 16.

based upon his status as an owner of real property in the neighborhood."[24]  Plaintiff avers that "The Pennsylvania Municipalities Planning Code contains no provision for an injured party to seek relief based upon this type of claim."[25]

Third, plaintiff asserts that his equal protection claim set forth in Count I is proper because he has alleged that he has been intentionally treated differently from others similarly situated, and that there is an unlawful motive behind this treatment.  Therefore, plaintiff avers that Count I should not be dismissed.

Fourth, regarding Count II, plaintiff contends that his § 1985 conspiracy claim is properly pled because it sufficiently gives defendants fair notice of what the claim is and the grounds upon which it rests.  Moreover, plaintiff avers that district courts in the Third Circuit have consistently held that § 1985 claims must comply with the "official policy or custom" requirement set forth in Monell, supra.  He asserts that the Complaint alleges that the City of Bethlehem established official policies or customs allowing defendant Lezoche, as a zoning officer, to "engage in transactions constituting a conflict of interest,...to selectively and maliciously enforce the law, [and]

---

[24]     Plaintiff's brief in opposition, pages 19-20.

[25]     Plaintiff's brief in opposition, page 20.

to utilize his office to threaten or intimidate citizens of the City of Bethlehem who disagree with his views".[26]

Fifth, regarding Count III, plaintiff avers that the Complaint alleges facts from which a reasonable inference of a conspiracy could be drawn.  Specifically, plaintiff contends that defendant Lezoche, as an individual property owner with an interest in putting plaintiff out of business, agreed with multiple agents of the City to harass and selectively enforce laws against plaintiff and otherwise treat plaintiff differently than other, similarly situated property owners in an attempt to get plaintiff to cease his business operations.  Moreover, plaintiff asserts that the Complaint specifies the conduct, time, place, and persons responsible for each incident in great detail.

Further, plaintiff contends that the City of Bethlehem can be a conspirator under the intracorporate conspiracy doctrine.  Plaintiff avers that although a municipality's employees cannot conspire among themselves or with the municipality in their official capacities, they can conspire with each other in their individual capacities.  Thus, plaintiff asserts that defendant Lezoche can conspire with the City or its agents, in his individual capacity because he acted outside the scope of his municipal authority.

---

[26]     Plaintiff's brief in opposition, page 24; Complaint, paragraph 107.

<u>DISCUSSION</u>

<u>Claims Against Defendant Lezoche</u>

The parties agree that each cause of action in this matter is governed by a two-year statute of limitation. In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury, which accrues when plaintiff knew or should have known of the injury upon which its action is based. <u>Sameric Corporation of Delaware v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1988). Pennsylvania's statute of limitations for personal injury is two years. 42 Pa.C.S.A. § 5524. Therefore, plaintiff's equal protection and due process claims set forth in Count I, as well as his state-law claims set forth in Counts III and IV, are subject to a two-year statute of limitations.

Moreover, the statute of limitations for § 1985(3) conspiracy claims are subject to the same limitations period as § 1983 actions, that is, in Pennsylvania, two years. <u>Bougher v. University of Pittsburgh</u>, 882 F.2d 74, 79 (3d Cir. 1989). Accordingly, plaintiff's § 1985 conspiracy claim in Count II is also subject to a two-year statute of limitation.

According to defendants, plaintiff's claims against defendant Lezoche accrued, at the latest, on October 27, 2006, when defendant Lezoche issued a responsive memorandum to a City council member. Defendants aver that this date represents the

-24-

most recent action involving defendant Lezoche.  Because plaintiff did not institute this suit until December 30, 2008, more than two years after October 27, 2006, defendants conclude that the statute of limitations bars this action against defendant Lezoche.

Plaintiff contends, however, that the "continuing wrong" doctrine[27] renders his claims against defendant Lezoche timely.  Under the continuing wrong doctrine, which tolls the statute of limitations, a federal cause of action based on a defendant's continuing conduct is timely provided that the last act of that continuing conduct is within the limitations period. Sameric, 142 F.3d at 599.  In applying the continuing wrong doctrine, the court focuses on the affirmative acts of the defendant.  Id.

According to the Complaint in this case, the most recent action involving defendant Lezoche occurred on October 27, 2006.  Nevertheless, plaintiff contends that the continuing wrong doctrine tolled his statute of limitations until January 10, 2007, when Lou Malpedo sent plaintiff a "Final Notice".  Plaintiff contends that it is an "absolutely reasonable

---

[27]    This doctrine is also known as the continuing violations doctrine. See Lipschultz v. Logan Assistance Corporation, 50 Fed.Appx. 528, 530 n.1 (3d Cir. 2002).  In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is 'more than the occurrence of isolated or sporadic acts.'" United States v. Cowell, 263 F.3d 286, 292 (3d Cir. 2001). When determining whether the continuing wrong doctrine applies, courts consider three factors: subject matter, frequency, and permanence.  Cowell, 263 F.3d 292-293.  The degree of permanence is the most important of the factors.  Id.

-25-

inference" that the January 10, 2007 notice was prepared and sent to plaintiff "at the behest of Lezoche or at the very least, to further the aims established by Lezoche".

Focusing on the affirmative acts of defendant Lezoche, as required under the continuing wrong doctrine, I conclude that plaintiff has not pled facts which support plaintiff's contention that defendant Lezoche was involved with the January 10, 2007 notice sent by housing inspector Lou Malpedo. The Complaint includes no facts suggesting that Mr. Malpedo sent the "Final Notice" to plaintiff at defendant Lezoche's request or to further any inappropriate aims established by defendant Lezoche.

The Complaint establishes only one possible factual link between defendant Lezoche and the January 10, 2007 "Final Notice". Specifically, the October 27, 2006 inter-office memorandum sent by defendant Lezoche in response to Mr. Donchez, a City councilman, refers to a "recent complaint" filed regarding a "no license plate" vehicle on plaintiff's parking lot. That memorandum states that "Housing supervisor Mike Palos will investigate this complaint."[28] The January 10, 2007 "Final Notice" directed plaintiff to remove two vehicles, a blue Hyundai (plate 6LA0750) and a Plymouth Horizon (plate DLE1501) from his

---

[28]    Complaint, paragraph 93.

parking lot in accordance with the City's abandoned vehicle ordinance.[29]

Accepting these facts as true, as I must for purposes of this motion to dismiss, and drawing all reasonable inferences therefrom in plaintiff's favor, as I also must do, I conclude that plaintiff has not pled facts to support his contention that defendant Lezoche was involved with the January 10, 2007 "Final Notice". Although defendant Lezoche's October 27, 2006 memorandum refers to a complaint regarding a "no license plate" vehicle on plaintiff's parking lot, I cannot reasonably infer that the January 10, 2007 "Final Notice", which was issued more than two months later and referred to two vehicles by specific license plate numbers, is related to the October 27, 2006 memorandum.

Moreover, the Complaint offers no other factual allegations connecting defendant Lezoche to the January 10, 2007 "Final Notice". For example, plaintiff has not alleged any communication or relationship between defendant Lezoche and Lou Malpedo, who issued the "Final Notice" to plaintiff. Nor does the Complaint allege any facts to support a conclusion that the January 10, 2007 "Final Notice" was in any way related to the other incidents involving defendant Lezoche.

---

[29]     Complaint, paragraph 95.

Therefore, I cannot conclude that the January 10, 2007 "Final Notice" issued by Mr. Malpedo tolls the statute of limitations on claims against defendant Lezoche for purposes of this action. According to the Complaint, the final action involving defendant Lezoche was on October 27, 2007, plaintiff's claims against defendant Lezoche accrued on that date.

Accordingly, plaintiff had two years from that date, or until October 27, 2009, to initiate his suit against defendant Lezoche. The within suit was filed December 30, 2009, more than two years after his claims against defendant Lezoche accrued. Those claims are therefore time-barred.

Therefore, I grant the motion to dismiss to the extent it seeks dismissal of Counts I-IV against defendant Lezoche, without prejudice for plaintiff to re-plead his claims to allege facts supporting the conclusion that his claims against defendant Lezoche accrued on or after December 30, 2007 (two years prior to the filing of this lawsuit).

<u>Claims Against the City</u>

**Count I**

The City does not challenge Count I to the extent it alleges a claim of municipal liability under <u>Monell</u>, <u>supra</u>. As a result, with regard to the City, I address Count I only to the extent that it alleges procedural due process and equal protection claims under the Fourteenth Amendment.

*Due Process*

First, defendants contend that plaintiff's procedural due process claim should be dismissed because Pennsylvania law provides adequate remedies to rectify a legal error by a local administrative body. Plaintiff responds that his claim is proper because it does not challenge an administrative decision, but rather a pattern of harassment and selective law enforcement against him. However, plaintiff cites no authority in support of his assertion that a procedural due process challenge is an appropriate cause of action under the facts alleged.

To establish a procedural due process claim under § 1983, a plaintiff must prove (1) a deprivation of an individual interest encompassed by the Fourteenth Amendment's protection of life, liberty or property, and (2) that the procedures available did not provide due process of law. <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 233-234 (3d Cir. 2006).

However, procedural due process does not protect every benefit. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of receiving the benefit. Instead, a person must have a legitimate claim of entitlement to the benefit. Entitlements are not established by the Constitution. Rather, they are created and defined by existing rules or understandings that stem from an independent source,

such as state law.  <u>Town of Castle Rock, Colorado v. Gonzales</u>,
545 U.S. 748, 756, 125 S.Ct. 2796, 2803, 162 L.Ed.2d 658, 668
(2005)(internal citation omitted).

Count I alleges that plaintiff has a property interest
in his property and in conducting a business on his property.  It
further alleges that plaintiff has a "constitutionally protected
right to the use and enjoyment of his Property, and to contract,
to operate a business, and to engage in the livelihood of one's
choice, free from state interference."[30]  His brief offers no
legal authority for these propositions.  However, assuming,
<u>arguendo</u>, that the factual allegations set forth in the Complaint
establish a "deprivation of an individual interest encompassed by
the Fourteenth Amendment's protection of life, liberty or
property," plaintiff does not allege any facts supporting a
conclusion that the procedures available to him did not provide
due process of law. <u>Id.</u>

Moreover, plaintiff's brief offers little in the way of
legal discussion on this issue.  It concedes that his procedural
due process claim does not attack any particular City decision,
but rather contends that his claims arise from defendant
Lezoche's "personal and unlawful campaign, supported by the City
of Bethlehem, to cleanse the neighborhood of businesses that are

---

[30]     Complaint, paragraphs 98-100.

not in keeping with his view of the neighborhood".[31]  He cites no authority for the proposition that such a claim is properly brought under the procedural due process clause of the Fourteenth Amendment.

Because plaintiff has pled no facts which would permit a jury to conclude that the City deprived him of a benefit without due process of law, and offers no meaningful legal discussion on this point, as required by Rule 7.1(c) of the Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania, I grant defendants' motion to the extent it seeks dismissal of the procedural due process claim set forth in Count I.

*Equal Protection*

Second, defendants aver that plaintiff's equal protection claim in Count I should be dismissed because the Complaint fails to allege facts supporting a conclusion that plaintiff was similarly situated with other property owners, but was treated differently.  In response, plaintiff avers that the Complaint contains allegations that he has been intentionally treated differently from others similarly situated, and that there is an unlawful motive behind this treatment.

Plaintiff does not argue that he has been treated unfairly based on his membership in a protected class.  Rather,

---

[31]     Plaintiff's brief, pages 19-20.

he pursues his equal protection claim on a "class of one" theory. In order to state a state an equal protection claim as a "class of one", a plaintiff must, at a minimum, allege that (1) defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.  <u>Hill</u>, 455 F.3d at 239.

At the pleading stage, plaintiff is not required to "name names" for purposes of the first <u>Hill</u> factor.  Moreover, plaintiff is not required to identify in the Complaint specific instances where others have been treated differently. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 245 (3d Cir. 2008).  Rather, a general allegation that plaintiff has been treated differently from others similarly situated will suffice. <u>Id.</u> at 244.

In this case, defendants are correct that the Complaint does not make specific factual allegations regarding other property owners.  Plaintiff's only allegation in this regard is that "the Defendants, in their individual capacities, conspired with each other...to engage in a pattern of harassment, selective enforcement of the law, and procedural abuses against Tomino, treating him differently than other similarly situated property owners."[32]  Plaintiff contends that, under the pleading standard

---

[32]     Complaint, paragraph 101.

set forth in <u>Phillips</u>, this averment satisfies the first <u>Hill</u> factor.

Although the heading to Count I of plaintiff's Complaint states that Count I is ostensibly against "All Defendants", paragraph 101 (which is contained within Count I) is ambiguous to the extent it alleges that defendants acted in their "individual capacities" in conspiring against plaintiff and "treating him differently than other similarly situated property owners". Plaintiff offers no legal authority, and this court is aware of none, for the proposition that the City (as one of "All Defendants", against whom Count I is alleged) can be held liable in an "individual" capacity.

However, under the relaxed federal notice pleading standard, as specifically applied to the "class of one" context by <u>Phillips</u>, I conclude, for purposes of this motion to dismiss, that paragraph 101 sufficiently alleges that the City treated plaintiff differently than other, similarly situated property owners. Therefore, plaintiff has satisfied the first <u>Hill</u> factor. <u>See also</u> <u>Phillips</u>, <u>supra</u>.

Defendants do not argue that plaintiff's allegations fail to satisfy the second and third <u>Hill</u> factors, <u>i.e.</u>, that the City treated plaintiff differently intentionally, and that there was no rational basis for the difference in treatment. <u>Hill</u>, 455 F.3d at 239. However, I conclude that plaintiff's allegation

that "Defendants showed a desire to bring about a certain result and/or an awareness that it is substantially certain to happen", if proven at trial, would support a conclusion that the City acted intentionally for purposes of the second <u>Hill</u> factor.[33]

Moreover, although plaintiff's Complaint does not directly aver a lack of a "rational basis" for the difference in treatment, I construe the Complaint as containing sufficient allegations to that effect. For example, paragraph 39 alleges that defendants conducted "unsubstantiated" inspections of plaintiff's property. In addition, paragraph 107 asserts that the City had an official policy or custom of permitting defendant Lezoche to "selectively and maliciously enforce the law".

These allegations do not specifically aver that the City intentionally treated defendant differently with no rational basis for such treatment. However, in light of the relaxed notice pleading standard, and drawing all reasonable inferences in plaintiff's favor, I conclude that the Complaint, as a whole, alleges sufficient facts to support such a conclusion. Therefore, plaintiff's allegations satisfy the second and third <u>Hill</u> factors.

Accordingly, I deny defendants' motion to dismiss to the extent that it seeks dismissal of plaintiff's equal

---

[33]     Complaint, paragraph 106.

protection claim against the City, as set forth in Count I of the Complaint.

## Count II

### *Conspiracy*

Count II alleges that defendants "conspired with themselves and, on information and belief, with other third parties, to impede and obstruct Tomino's applications under the Zoning Ordinance, use of his property and operation of his business", and engaged in selective and wrongful enforcement of the law "with the intent to deny Tomino his right to equal protection of the laws, including his right to due process, for the purpose of preventing Tomino from exercising his property rights", in violation of 42 U.S.C. § 1985.[34]

Although the Complaint does not identify which particular provision of § 1985 is implicated, plaintiff presumably intends to proceed under § 1985(3), titled "Depriving persons of rights or privileges."[35]  That subsection creates a private cause of action for damages incurred "[i]f two or more persons...conspire...for the purpose of depriving...any person of the equal protection of the laws".  42 U.S.C. § 1985(3).

---

[34]    Complaint, paragraph 114.

[35]    Neither § 1985(1) ("Preventing officer from performing duties") nor § 1985(2) ("Obstructing justice; intimidating party, witness or juror") appears to apply here.

In order to establish a claim for conspiracy under § 1985(3), a plaintiff must show the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006).

Proof of conspiracy, or an agreement to commit an unlawful act, is an essential element under § 1985. Gordon v. Lowell, 95 F.Supp.2d 264, 270 (E.D.Pa. 2000)(Van Antwerpen, J.). That is, "[a]n allegation of conspiracy is insufficient to sustain a cause of action under [§ 1985]; it is not enough to use the term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement." Id.

Although § 1985(3) applies to private conspiracies, it "was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'" Farber, 440 F.3d at 135 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971). Thus, because § 1985(3) requires "the intent to deprive of equal protection, or equal privileges and immunities," a claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind

the conspirators' action" in order to state a claim.  <u>Farber</u>,
440 F.3d at 135 (quoting <u>Griffin</u>, <u>supra</u>).

Moreover, for purposes of § 1985(3), a municipality and
its officials are considered a single entity that cannot conspire
with itself.  <u>Doherty v. Haverford Township</u>, 513 F.Supp.2d 399,
409 (E.D.Pa. 2007)(Strawbridge, J.)(citing <u>Robison v. Canterbury
Village, Inc.</u>, 848 F.2d 424, 431 (3d Cir. 1988); <u>Aardvark
Childcare & Learning Center, Inc. v. Township of Concord</u>, 401
F.Supp.2d 427, 450 (E.D.Pa. 2005)).  This court has concluded
that a municipality is "not capable of possessing the invidious
discriminatory animus or motive required to successfully maintain
an action under § 1985(3)."  <u>Scott v. Township of Bristol</u>,
1990 WL 178556, at *6 (E.D.Pa. Nov. 14, 1990)(Hutton, J.).

Under the intracorporate conspiracy doctrine, a
§ 1985(3) conspiracy between a municipality and one of its
employees may be maintained to the extent that liability is
asserted against the employee in his individual, rather than
official, capacity.  <u>See</u> <u>Scott</u>, 1990 WL 178556, at *6.  However,
a municipality may not be held liable for its employees'
violations of § 1985 under a theory of respondeat superior.  <u>See</u>
<u>Simril v. Township of Warwick</u>, 2001 WL 910947, at *2 n.5 (E.D.Pa.

Aug. 10, 2001)(Kelly, Robert F., S.J.)(citing <u>DiMaggio v.</u>
<u>O'Brien</u>, 497 F.Supp. 870, 876 (E.D.Pa. 1980)(Lord, C.J.).[36]

Because a municipality may not conspire with itself,
<u>see</u> <u>Doherty</u>, <u>supra</u>, plaintiff's § 1985(3) claim is viable only to
the extent that he alleges facts to support a conclusion that the
municipality conspired with a municipal employee acting in his
individual capacity. <u>See</u> <u>Scott</u>, <u>supra</u>.

As discussed above, plaintiff has not alleged any
actions by defendant Lezoche which occurred within the applicable
statute of limitations. Thus, plaintiff has not established the
existence of a conspiracy by alleging an agreement to commit an
unlawful act for purposes of the first <u>Farber</u> factor. <u>Farber</u>,
440 F.3d at 134; <u>Gordon</u>, 95 F.Supp.2d at 270. Similarly,
plaintiff has not alleged any actions in furtherance of the
conspiracy which occurred within the applicable statute of
limitations, and therefore has not satisfied the third <u>Farber</u>
factor. <u>Farber</u>, 440 F.3d at 134.

Moreover, plaintiff does not assert that the alleged
conspiracy was based on his membership in any protected class, as
required under <u>Griffin</u>, <u>supra</u>. To the contrary, although
plaintiff has alleged an equal protection claim, as discussed

---

[36] "[T]he Monell analysis that liability under s 1983 cannot be
predicated on respondeat superior applies with equal force to s 1985."
<u>DiMaggio</u>, 497 F.Supp. at 875-876.

above, he pursues that claim on a "class of one" theory and does not contend that he is a member of any protected class.

Although plaintiff may assert an equal protection claim based on a "class of one", a "class of one" theory cannot support a § 1985(3) action "because a 'class of one' is not the type of group that could legitimately be subjected to class-based animus." Welsh v. Male, 2007 WL 906182, at *4 (E.D.Pa. March 22, 2007) (Golden, J.) (citing, inter alia, Jackson v. Gordon, 145 Fed.Appx. 774, 778 (3d Cir. 2005)(unpublished, not precedential)(affirming dismissal of a § 1985(3) action where plaintiff also alleged a "class of one" equal protection violation).

Other courts have also rejected a "class of one" contention for purposes of § 1985(3). See, e.g., Royal Oak Entertainment, LLC v. City of Royal Oak, Michigan, 205 Fed.Appx 389, 399 (6th Cir. 2006); C&H Co. v. Richardson, 78 Fed.Appx. 894, 901-902 (4th Cir. 2003).

Therefore, because plaintiff fails to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action", he has not satisfied the second Farber factor. Farber, 440 F.3d at 135 (quoting Griffin, supra).

Accordingly, I grant defendants' motion to dismiss Count II against the City, without prejudice for plaintiff to

re-plead his § 1985(3) claim, if appropriate, including facts to support a conclusion that actions taken by the City were class-based, that the City conspired with an employee acting in his individual capacity, and that an act in furtherance of the conspiracy occurred within the applicable statute of limitations.

## Count III

### *Civil Conspiracy*

Count III alleges a claim for civil conspiracy against all defendants. As noted above, I have dismissed Count III against defendant Lezoche. The City avers that the claim should also be dismissed against the City because the City cannot be a conspirator; a conspiracy requires two or more persons; and defendant Lezoche cannot be a sole conspirator.

Moreover, defendants aver that the Complaint does not plead with sufficient specificity that defendants agreed to any plot to deprive plaintiff of rights. Plaintiff responds that his Complaint alleges, with sufficient specificity, that defendant Lezoche agreed with City agents to harass, selectively enforce laws, and otherwise treat him differently than other, similarly situated individuals.

Plaintiff's brief in opposition makes clear that Count III is brought pursuant to Pennsylvania state law. In Pennsylvania, to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or

more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. General Refractories Company v. Fireman's Fund Insurance Company, 337 F.3d 297, 313 (3d Cir. 2003) (citing Strickland v. University of Scranton, 700 A.2d 979, 987-988 (Pa.Super. 1997)). Moreover, a claim for civil conspiracy cannot be pled without also alleging an underlying tort. McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005).

In his brief in opposition, plaintiff contends that the City can be a conspirator under the intracorporate conspiracy doctrine, as discussed above. However, the cases on which plaintiff relies refer only to federal, not state, civil conspiracy claims. Specifically, plaintiff cites case law applying the intracorporate conspiracy doctrine in the context of § 1985(3) conspiracy claims. See, e.g., Heffernan v. Hunter, 189 F.3d 405 (3d Cir. 1999).

Plaintiff cites no authority for the proposition that under Pennsylvania state law, a municipality may be liable for civil conspiracy. However, defendants also fail to cite any authority for their contention that, under Pennsylvania law, a municipality cannot be a conspirator. Accordingly, I do not reach that issue and assume without deciding, for purposes of

this motion to dismiss, that the City may be liable as a conspirator under Pennsylvania state law.

However, as discussed above regarding Count II, plaintiff has not alleged any conspiratorial actions by defendant Lezoche, or any other individual acting in an individual capacity, which occurred within the applicable statute of limitations.  Thus, even to the extent a municipality may be liable as a conspirator under Pennsylvania law, plaintiff has not established a "combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose".  Therefore, Count III does not satisfy the first element of civil conspiracy under Pennsylvania law.  <u>General Refractories Company</u>, 337 F.3d at 313.

Similarly, as also discussed above, plaintiff has not alleged any actions in furtherance of the conspiracy which occurred within the applicable statute of limitations.  Because he has not alleged "an overt act done in pursuance of the common purpose", Count III does not satisfy the second element of civil conspiracy.  <u>Id.</u>

Therefore, I conclude that although plaintiff has pled actual legal damage as a result of the alleged conspiracy, his Complaint does not satisfy the first two elements of civil conspiracy under Pennsylvania law.  Accordingly, I grant defendants' motion to the extent it seeks dismissal of Count III

-42-

against the City because plaintiff has not alleged facts to support the claim. I therefore dismiss that Count against the City without prejudice for plaintiff to re-plead Count III in accordance with this Opinion.

CONCLUSION

For all the foregoing reasons, I grant in part and deny in part defendants' motion to dismiss. Specifically, I grant the motion to the extent it seeks dismissal of all counts against defendant Lezoche, without prejudice for plaintiff to amend his Complaint to allege facts supporting the conclusion that his claims against defendant Lezoche accrued within the applicable statute of limitations.

Moreover, I grant the motion to the extent it seeks dismissal of the due process claim against the City set forth in Count I and dismissal of Counts II and III against the City, without prejudice for plaintiff to amend those counts in accordance with this Opinion. In all other respects, defendants' motion is denied.