<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

| | | |
|---|---|---|
| WILLIAM TOMINO, Individually<br>  and trading as Tomino's Deli, | ) | Civil Action |
| | ) | No. 08-cv-06018 |
|        Plaintiff | ) | |
| | ) | |
|        vs. | ) | |
| | ) | |
| CITY OF BETHLEHEM; | ) | |
| JOHN R. LEZOCHE, Individually | ) | |
|  and as Zoning Officer for the | ) | |
|  City of Bethlehem, | ) | |
| | ) | |
|        Defendants | ) | |

\*   \*   \*

APPEARANCES:

          SHERYL L. BROWN, ESQUIRE
               On behalf of Defendants City of Bethlehem
               and John R. Lezoche

          THOMAS K. SCHINDLER, ESQUIRE
               On behalf of Plaintiff

\*   \*   \*

<u>O P I N I O N</u>

JAMES KNOLL GARDNER
United States District Judge


     The matter before the court is Defendants City of

Bethlehem and John R. Lezoche's Motion for Summary Judgment,

filed October 21, 2011.[1]

_____

     [1]     Defendants' motion for summary judgment was filed together with
Defendants City of Bethlehem and John R. Lezoche's Memorandum of Law in
Support of Their Motion for Summary Judgment and Defendants City of Bethlehem
and John R. Lezoche's Undisputed Statement of Facts.

Plaintiff's Answer to Motion of Defendants for Summary Judgment was filed on November 23, 2011.[2]

### SUMMARY OF DECISION

For the following reasons, I granted defendants' motion for summary judgment.  Specifically, I concluded that plaintiff's claim against defendant Lezoche was barred by the statute of limitations.  Accordingly, I dismissed plaintiff's Amended Complaint against defendant Lezoche with prejudice.

Moreover, in the alternative, even if plaintiff's equal protection claim against defendant Lezoche had been timely, it would have failed on the merits because plaintiff did not provide

---

[2]     Plaintiff filed a Memorandum of Law together with his answer. Defendants' Reply Brief in Support of its Motion for Summary Judgment was filed November 28, 2011.

Rule 7.1 of the Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania provides in pertinent part that:

> any party opposing [a] motion shall serve a brief in opposition, together with such answer or other response which may be appropriate...in the case of a motion under Fed.R.Civ.P. 12(b) or 56, the opposing party shall respond within twenty-one (21) days.  In the absence of a timely response, the motion may be granted as uncontested except that a summary judgment motion to which there has been no timely response, will be governed by Fed.R.Civ.P. 56(c).

Here, defendants filed their motion on October 21, 2011.  Thus, plaintiff's response was due November 14, 2011 (twenty-one days pursuant to Local Rule 7.1(c) plus three additional days pursuant to Local Rule 5.1.2, which proscribes that service by electronic means are treated in accordance with Federal Rule of Civil Procedure 6(d)).

Plaintiff did not respond until November 23, 2011.  However, because a motion for summary judgment cannot be granted as uncontested and plaintiff's response is helpful in considering the merits of defendants' motion for summary judgment, I have considered plaintiff's response.

sufficient evidence that defendant Lezoche treated plaintiff differently than other similarly situated persons.

In addition, I granted summary judgement on plaintiff's claim against defendant City of Bethlehem because plaintiff did not provide sufficient evidence that the City had an official custom or policy which violated any of plaintiff's constitutional rights. Accordingly, I entered judgment in favor of defendant City and against plaintiff.

As a result, I dismissed as moot both defendant Lezoche's claim of qualified immunity and plaintiff's claim for punitive damages.

<u>JURISDICTION</u>

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

<u>VENUE</u>

Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because the events giving rise to plaintiffs' claims allegedly occurred in Bethlehem, Northampton County, Pennsylvania, which is within this judicial district.

<u>PROCEDURAL HISTORY</u>

Plaintiff, William Tomino, Individually and trading as Tomino's Deli, initiated this action on December 30, 2008 by

filing a four-count civil Complaint[3] against defendant City of Bethlehem ("the City"); defendant John R. Lezoche, Individually and as Zoning Officer for the City of Bethlehem; and defendants "John Does 1-100". Plaintiff's claims arose from actions allegedly taken by defendants in the context of plaintiff's operation of Tomino's Deli in Bethlehem, Pennsylvania.

Defendants filed a motion to dismiss plaintiff's original Complaint on March 9, 2009. By my Order and accompanying Opinion dated and filed March 31, 2010, I granted in part and denied in part defendants' motion to dismiss. Specifically, I dismissed all four claims against defendant Lezoche without prejudice for plaintiff to replead those claims to allege facts supporting the conclusion that his claims against defendant Lezoche were timely.

I also dismissed plaintiff's claim in Count I against the City brought pursuant to 42 U.S.C. § 1983 (for violations of the Due Process Clause of the Fourteenth Amendment to the United

---

[3] Count I of the Complaint brought an action against all defendants pursuant to 42 U.S.C. § 1983 for violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and for violations of Article IV, section 2 of, and the Fourteenth Amendment to, the United States Constitution (Privileges and Immunities Clause).

Count II brought an action against all defendants pursuant to 42 U.S.C. § 1985 for conspiracy to violate plaintiff's equal protection and due process rights.

Count III brought a pendent state law claim against all defendants for civil conspiracy.

Count IV brought a pendent state law claim against defendant Lezoche for abuse of process.

States Constitution), plaintiff's claim in Count II pursuant to
42 U.S.C. § 1985 (for conspiracy to violate the Due Process
Clause and Equal Protection Clause of the Fourteenth Amendment),
and plaintiff's pendent state law claims in Counts III and IV for
civil conspiracy and abuse of process, respectively, all without
prejudice for plaintiff to replead his claims in accordance with
my March 31, 2009 Opinion.  I denied defendants' motion to
dismiss to the extent that it sought dismissal of plaintiff's
claim in Count I brought pursuant to 42 U.S.C. § 1983 for equal
protection violations.

On April 21, 2010 plaintiff filed an Amended Complaint[4]
against the City of Bethlehem and John R. Lezoche, Individually
and as Zoning Officer for the City of Bethlehem.  The Amended
Complaint brought an action pursuant to 42 U.S.C. § 1983 alleging
equal protection and procedural due process violations, and
deprivation of privileges and immunities granted by the United

---

[4]     Count I of the Amended Complaint brought an action pursuant to
42 U.S.C. § 1983 against both defendants alleging a conspiracy to violate
plaintiff's procedural due process and equal protection rights.

        Count II alleged a pendent state law claim against both defendants
for civil conspiracy.

        Count III alleged a pendent state law claim against defendant
Lezoche for abuse of process.

        In his Amended Complaint, plaintiff did not pursue his original
Count II, which brought an action pursuant to 42 U.S.C. § 1985 alleging
conspiracy to commit due process and equal protection violations.
Additionally, plaintiff did not pursue his section 1983 claims based on
procedural due process violations and deprivation of his privileges and
immunities.  Finally, plaintiff did not pursue his claims against the
previously unidentified "John Does 1-100".

States Constitution.  It also included pendent state-law claims for civil conspiracy and abuse of process.

On May 5, 2010 defendants filed a motion to dismiss the Amended Complaint.  By my Order dated March 22, 2011 and filed March 23, 2011 I granted in part and denied in part defendants' motion to dismiss the Amended Complaint.

Specifically, I dismissed in their entirety Count II of the Amended Complaint (civil conspiracy) and Count III (abuse of process).  However, I denied defendants' motion to dismiss plaintiff's equal protection claims against defendants Lezoche and the City in Count I of the Amended Complaint.  Accordingly, I gave defendants until April 25, 2011 to answer Count I of plaintiff's Amended Complaint.  On April 25, 2011, Defendants' Answer to Plaintiff's Amended Complaint with Affirmative Defenses was filed.

<u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  <u>See also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); <u>Federal Home Loan Mortgage</u>

-6-

Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 443 (3d Cir. 2003).

Only facts that may affect the outcome of a case are "material". Moreover, all reasonable inferences from the record are drawn in favor of the non-movant. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000).

Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings. Rather they must present competent evidence from which a jury could reasonably find in their favor. Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

FACTS

Based upon the pleadings, record papers, excerpts from plaintiff's and defendant Lezoche's depositions,[5] exhibits, and

---

[5]   Excerpts from the Deposition of William Tomino, August 24, 2011 ("N.T. Tomino Deposition"), and from the Deposition of John Lezoche, August 25, 2011 ("N.T. Lezoche Deposition"), are attached to defendants' motion for summary judgment as Exhibits L and N, respectively. (Exhibit numbers in this footnote and the following footnotes refer to exhibits attached to Defendants City of Bethlehem and John R. Lezoche's Motion for Summary Judgment.)

defendants' statement of undisputed material facts,[6] the

pertinent undisputed facts for purposes of the motion for summary

judgment are as follows.

On December 1, 1997 Joan Tomino and plaintiff William

Tomino purchased properties located at 1033, 1035 and 1037 Main

Street, Bethlehem, Pennsylvania ("Property").  The Property had

historically been used as a barbershop and a tailor shop.  The

Property was located in an R-M Residential Zoning District under

the provisions of the Zoning Ordinance of the City of Bethlehem.[7]

A Codified Zoning Ordinance of the City of Bethlehem,

Ordinance No. 2210 became effective on September 25, 1970 and was

amended on March 3, 2008 ("Zoning Ordinance").  The purpose of

---

[6]    My Rule 16 Status Conference Order dated May 9, 2011 directed any
party opposing a motion for summary judgment to file a separate short concise
statement, responding to the moving party's statement of the material facts
about which the opposing party contends there is a genuine dispute.  It
further provided that all factual assertions set forth in the moving party's
statement shall be deemed admitted unless specifically denied by the opposing
party.

Plaintiff's Answer to Motion of Defendants for Summary Judgment
appropriately provided 19 numbered paragraphs, which responded to the
corresponding numbered paragraphs in defendants' motion for summary judgment.
However, plaintiff did not respond to Defendants City of Bethlehem and John
Lezoche's Undisputed Statement of Facts ("Defendants' Undisputed Facts").
Because plaintiff did not respond to defendants' statement of facts, I deemed
plaintiff to have admitted any statement of fact asserted by defendants that
did not conflict with plaintiff's answer to defendant's motion for summary
judgment.  See Fed.R.Civ.P. 56(e)(2).

[7]    Amended Complaint, ¶¶ 15 and 19; Defendants' Undisputed Facts,
¶ 3.

the Zoning Ordinance was to promote public health, safety, morals and the general welfare of its citizens.[8]

The purpose of an R-M Zoning District was to provide for high density residential uses and compatible residentially-oriented non-residential uses.  The R-M Zoning District permitted only the following uses as of right: (1) any use in R-G Residential District[9]; (2) single-family, semi-detached dwellings; (3) two family detached dwellings; and (4) two family semi-detached dwellings.[10]

Section 1325.05 of the Zoning Ordinance established the power and duty of the Zoning Hearing Board ("Board") to decide any question involving the interpretation of ordinances. Section 1325.07 established the power and duty of the Board to approve special exceptions in the best interests of the City of Bethlehem, the convenience of the community, and the public welfare.  Any person affected by the Zoning Ordinance was allowed

---

[8]     Defendants' Undisputed Facts, ¶ 85; Exhibit MM.

[9]     Uses permitted as of right in an R-G Residential District included any use permitted in an R-S Residential District, a boarding house and single family attached dwellings (Zoning Ordinance § 1306.02).  Uses permitted as of right in an R-S Residential District included only the uses permitted in an R-R Residential District (Zoning Ordinance § 1305.02).  Uses permitted as of right in an R-R Residential District included single family attached dwellings, public parks or playgrounds, farming on areas of less than one acre, roadside stands for the sale of farm and nursery products and electric substations or automatic telephone exchanges without any rotary converter or generating machinery.  (Zoning Ordinance § 1304.02).

[10]     Defendants' Undisputed Facts, ¶¶ 88-89; Exhibit MM.

to appeal a Board decision to the Court of Common Pleas of Lehigh or Northampton County.[11]

After purchasing the Property, Mr. Tomino requested a special exception for change of non-conforming use in order to change the Property from a vacant former barber shop and tailor shop to a delicatessen.  A delicatessen was a non-conforming use in an R-M Zoning District.[12]  Mr. Tomino proposed to operate the delicateesen at the Property with no seating or eating area inside or outside.[13]

On April 23, 1998 a hearing was held to consider Mr. Tomino's request for a special exception.  Parking was a problem in the neighborhood where the Property was located, and several neighboring property owners testified in opposition to Mr. Tomino's request for a special exception.[14]

However, prior to a decision being reached by the Board, Mr. Tomino and the neighbors who testified at the hearing agreed to specific conditions being imposed on the Property. Specifically, the agreed conditions were that: (1) no grill or any cooking device requiring a fan could be used;

---

[11]     Defendants' Undisputed Facts, ¶¶ 89-91; Exhibit MM. (Portions of the City of Bethlehem are located in both Lehigh and Northampton Counties).

[12]     Zoning Ordinance §§ 1307.2 and 1308.2.

[13]     Defendants' Undisputed Facts, ¶¶ 13 and 19; Exhibit D.

[14]     Defendants City of Bethlehem and John Lezoche's Undisputed Statement of Facts, ¶¶ 13-16 and 20; Exhibit D.

-10-

(2) improvements to the building would be made prior to opening the business; (3) the hours of operation of the business would be from 10:00 a.m. to 6:00 p.m. on Monday through Friday, 11:00 a.m. through 6:00 p.m. on Saturday and closed on Sunday; (4) no pinball machines, video or arcade games would be permitted; (5) no cigarette or lottery ticket sales would be permitted; (6) Mr. Tomino would waive his right to request any changes in these conditions unless there was a change in the use of the Property; and (7) the neighboring property owners waived their right to appeal this decision to the Court of Common Pleas.[15]

At the April 23, 1998 Zoning Board hearing, Mr. Tomino testified that he had adequate parking for the area and that eight parking spots available for the Property could be used by tenants of the other buildings which he owned at the Property. Mr. Tomino further testified that he did not anticipate expanding the parking lot.  Mr. Tomino also testified that the delicatessen would be a take-out facility and that he would not place any benches or tables outside.  Mr. Tomino planned to have two employees help run the delicatessen.[16]

The Board approved Mr. Tomino's request for a special exception subject to the specific conditions imposed by the

---

[15]    Defendants' Undisputed Facts, ¶¶ 22-25; Exhibits D and E.

[16]    Defendants' Undisputed Facts, ¶¶ 26-30; Exhibit E.

agreement reached between Mr. Tomino and the neighboring property owners.[17]

In January 1999 Mr. Tomino opened Tomino's Deli.  Later that year he sought a variance to expand the size of his delicatessen by more than 50 percent.[18]  He also sought a variance from the parking requirements within an R-M Residential District.[19]

On October 27, 1999 a public hearing was held to consider Mr. Tomino's requests.[20]  Each of his requests was denied.  Specifically, the Board reasoned that expansion of the delicatessen and a variance from parking requirements would be a detriment to the welfare of the public and surrounding area.[21]

In 2000 Mr. Tomino again requested a variance to expand his delicatessen size by more than 50 percent and a variance from the off-street parking requirements.  Additionally, he sought a use variance to change the delicatessen facility to a

---

[17]     Defendants' Undisputed Facts, ¶¶ 24 and 32; Exhibit D.

[18]     Operation of a delicatessen in an R-M Zoning District constituted a non-conforming use.  Accordingly, under the Zoning Ordinance, any expansion of a non-conforming use required a special exception (§ 1323.04); and an expansion of a non-conforming use by more than 50 per cent required a variance (§§ 1323.04 and 1325.06).

[19]     Amended Complaint, ¶ 26; Defendants' Undisputed Facts, ¶ 33-35; Exhibit F.

[20]     Id.

[21]     Defendants' Undisputed Facts, ¶¶ 36, 38, 39 and 40; Exhibit F. What the Board considered a "detriment" was their view that expansion of the delicatessen was not compatible with residentially oriented non-residential use, and that it would increase traffic and parking congestion and create safety concerns.  Exhibit F.

delicatessen/restaurant.   The Board denied Mr. Tomino's requests.[22]

In 2002 Mr. Tomino sought approval for a 270 square foot, one-story addition for his delicatessen.[23]   Additionally, he requested to extend the hours of operation of the delicatessen and again requested to change the delicatessen to a restaurant.   On March 27, 2002 a hearing was held before the Board to consider Mr. Tomino's requests.[24]

On April 2, 2002 defendant John R. Lezoche, the Zoning Officer, wrote to Mr. Tomino, advising him that his appeal for a special exception to expand lawful use was granted with certain conditions, but that his request to increase hours of operation was denied.   Specifically, Mr. Tomino's request to expand to include a bathroom and storage was approved with the conditions that there could be no sit-down eating at Tomino's Deli.   Mr. Tomino did not appeal the March 27, 2002 Board decision.[25]

On October 15, 2003 Bethlehem Councilman Robert J. Donchez prepared a memo to defendant Lezoche advising of

---

[22]    Defendants' Undisputed Facts, ¶ 41; Exhibit G.

[23]    A 270 square foot addition would have increased the size of the then existing delicatessen by exactly 50 per cent (Exhibit H).

[24]    Defendants' Undisputed Facts, ¶¶ 42-43 and 45; Exhibits H, I, and J.

[25]    Defendants' Undisputed Facts, ¶¶ 45-47; Exhibits J, K and L.

complaints regarding deliveries being made from Mr. Tomino's delicatessen between the hours of 12:00 midnight and 3:00 a.m. on Fridays and Saturdays.  Mr. Lezoche confirmed that deliveries were being made outside the permitted hours of operation.[26]

On November 23, 2003 Mr. Lozoche issued a Cease and Desist Order for violations concerning Mr. Tomino's delivery service after allowable business hours and for installing a table and seating outside the delicatessen.[27]

In November 2003 Mr. Tomino filed an appeal from the Cease and Desist Order.  A hearing was held on June 23, 2004 to consider his appeal.  By a vote of three to zero, the Board denied Mr. Tomino's appeal.[28]

The Board interpreted the conditions imposed on Mr. Tomino's hours of operations as prohibiting deliveries beyond store hours.  However, clean-up and preparation was not restricted during non-business hours.[29]

On August 6, 2004 the Board issued a formal written opinion.  Mr. Tomino did not appeal the Board's August 6, 2004

---

[26]    Defendants' Undisputed Facts, ¶¶ 48 and 49; Exhibits M and N.

[27]    Defendants' Undisputed Facts, ¶ 50; Exhibit O.

[28]    Defendants' Undisputed Facts, ¶ 53; Exhibit Q.

[29]    Defendants' Undisputed Facts, ¶ 54; Exhibit Q.

decision or the Board's interpretation of the restrictions on making off-hour deliveries.[30]

At some point, Mr. Tomino designated a portion of the rear yard on the Property to use as space to provide additional parking.  Mr. Lezoche came to the Property and advised Mr. Tomino that expanding parking on the Property would require approval from the City.[31]

On February 14, 2006 Mr. Lezoche wrote to Mr. Tomino regarding the land development review necessary to expand parking at the Property.  Defendant Lezoche requested additional information from plaintiff Tomino and indicated that a failure to respond within five days would result in the issuance of a Cease and Desist Order.[32]

On February 22, 2006 counsel for Mr. Tomino responded to Mr. Lezoche by letter, indicating that Mr. Tomino had not made any interior structural changes to the delicatessen and was not proposing any additional parking.  However, counsel for Mr. Tomino indicated in his letter that plaintiff did intend to use a portion of the rear yard for additional parking.  Counsel's

---

[30]    Defendants' Undisputed Facts, ¶¶ 55 and 56; Exhibit R.

[31]    Defendants' Undisputed Facts, ¶ 57; Exhibit S.

[32]    Defendants' Undisputed Facts, ¶ 57; Exhibits S, T and U.

letter indicated that counsel believed that approval for such parking was obtained in 2001.[33]

On May 24, 2006 Mr. Lezoche responded to counsel for Mr. Tomino, advising him that no parking would be permitted until Mr. Tomino obtained approval by requesting an appeal for a special exception for his parking lot.  Mr. Lezoche advised Mr. Tomino's counsel that Mr. Tomino would have to appeal within 30 days.[34]

On July 6, 2006 a Notice of Violation and a Cease and Desist Order was issued to Mr. Tomino regarding his use of the rear yard as a parking lot without approval of the Board.  On August 16, 2006 Mr. Lezoche filed a Civil Complaint on behalf of the City of Bethlehem against Mr. Tomino following the July 6, 2006 Cease and Desist Order.  On October 24, 2006 judgment on the Civil Complaint was entered in favor of Mr. Tomino.[35]

On October 19, 2006 Councilman Donchez wrote to Mr. Lezoche regarding water run-off problems from Mr. Tomino's rear parking lot.  On October 27, 2006 Mr. Lezoche advised Mr. Donchez that the City's legal bureau was reviewing the matter regarding the Property.  On February 16, 2007 the City of

---

[33]     Defendants' Undisputed Facts, ¶ 58; Exhibit T.

[34]     Defendants' Undisputed Facts, ¶ 59; Exhibit U.

[35]     Defendants' Undisputed Facts, ¶¶ 60-61 and 63; Exhibits V, W and Y.

Bethlehem filed a Complaint in Equity and a Petition for a Preliminary Injunction against Mr. Tomino.[36]

On April 12, 2007 an Agreement and Order of Court was issued which resolved the Complaint in Equity and Petition for a Preliminary Injunction.[37]

On August 16, 2006 Scott Sterner of the Bethlehem Bureau of Health issued a Notice of Violation regarding weeds on Mr. Tomino's property.  Mr. Tomino abated the weed situation.[38] However, on May 24, 2008 Mr. Tomino again received a notice of violation from the Department of Health regarding weeds on his property.  Again, the notice was issued through Mr. Sterner.[39]

On October 31, 2006 Lou Malpedo, Housing Inspector of the Bethlehem Bureau of Inspections, issued a violation to Mr. Tomino regarding abandoned vehicles in the rear and side of the building.  On January 10, 2007 Mr. Malpedo issued a final notice of violation to Mr. Tomino, advising him that he had 48 hours to remove two abandoned vehicles from the Property and that failure to do so could result in fines ranging from $200 to $1,000 per day.[40]

---

[36]    Defendants' Undisputed Facts, ¶¶ 64-67; Exhibits Z, AA and BB.

[37]    Defendants' Undisputed Facts, ¶ 70; Exhibit DD.

[38]    Exhibit GG, titled by defendants as "Inspection Notes," is not legible and does not indicate how Mr. Tomino abated his initial violation for weeds on the Property (Defendants' Undisputed Facts, ¶ 74; Exhibit GG).

[39]    Defendants' Undisputed Facts, ¶¶ 72-76; Exhibits FF, GG and HH.

[40]    Defendants' Undisputed Facts, ¶¶ 78-82; Exhibits JJ and KK.

CONTENTIONS OF THE PARTIES

Contentions of Defendants

Initially, defendants contended that plaintiff Tomino's claims against defendant Lezoche were filed beyond the two-year statute of limitations.

Next, defendant Lezoche contended that, even if the statute of limitations did not bar plaintiff's claims against him, plaintiff failed to present sufficient evidence to support an equal protection claim.

Defendants further contended that because defendant Lezoche was entitled to summary judgment, the City was likewise entitled to summary judgment because without any underlying liability, there could be no Monell[41] claim against the City.

Alternatively, defendants contended that even if plaintiff's claims against defendant Lezoche could proceed to trial, the City would be entitled to summary judgment because a municipality cannot be held liable under section 1983 based on a theory of *respondeat superior,* and plaintiff failed to establish that defendant Lezoche was acting pursuant to an official policy or custom necessary to hold the City liable under 42 U.S.C. § 1983.

---

[41]   Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978).

Moreover, defendants contended that defendant Lezoche was entitled to qualified immunity because he was acting in his capacity as a zoning officer for the City of Bethlehem and if any violation of plaintiff's rights had occurred, the right was not clearly established.

Finally, defendants contended that plaintiff's claims for punitive damages should have been dismissed because plaintiff did not establish that the actions of defendants rose to the level of wanton, willful or reckless conduct, and because plaintiff failed to respond to defendants' contention that plaintiff's punitive damages claim should be dismissed.

<u>Contentions of Plaintiff</u>

Plaintiff contended that under the "continuing wrong doctrine," his claims against defendant Lezoche were timely filed and therefore were within the applicable statute of limitations.

Plaintiff also contended that his equal protection claims should proceed to trial because there were disputed issues of material fact concerning whether the City's treatment of Mr. Tomino was similar to its treatment of others.

Moreover, plaintiff contended that his <u>Monell</u> claims against the City should proceed to trial because plaintiff demonstrated that the City had a custom or policy of consistently prosecuting him for every possible minor violation.

Finally, plaintiff contended that defendant Lezoche was not entitled to qualified immunity because filing a baseless civil action against plaintiff violated clearly established law.[42]

## DISCUSSION

### Section 1983

Plaintiffs' constitutional claims are actionable against defendants through 42 U.S.C. § 1983.  Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights.  Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, to state a claim under § 1983, a plaintiff must demonstrate that defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right.  Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908,

---

[42]     Plaintiff did not respond to defendants' contention that plaintiff's punitive damages claim should be dismissed.

1913, 68 L.Ed.2d 420, 428 (1986);  Chainey v. Street,
523 F.3d 200, 219 (3d Cir. 2008)(quoting Kaucher v. County of
Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).

A defendant acts under color of state law when he
exercises power "possessed by virtue of state law and made
possible only because the wrongdoer is clothed with the authority
of state law." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250,
2255, 101 L.Ed.2d 40, 49 (1988); Bonenberger v. Plymouth
Township, 132 F.3d 20, 23 (3d Cir. 1997).

### Count I

As noted above, as a result of my March 23, 2011 Order
dismissing Counts II and III of plaintiff's Amended Complaint,
the only claims remaining in this case are plaintiff's claims in
Count I of his Amended Complaint against both defendants.  In
Count I of his Amended Complaint, plaintiff alleges a cause of
action under 42 U.S.C. § 1983 against both defendants for
violating his right to equal protection of the laws under the
Fourteenth Amendment to the United States Constitution.[43]

---

[43]     Plaintiff's Amended Complaint, ¶¶ 103 and 109.

In Count I of the Amended Complaint, plaintiff also alleges a
cause of action under 42 U.S.C. § 1983 against both defendants for violating
his rights to procedural due process under the Fourteenth Amendment to the
United States Constitution (¶ 103) and for depriving him of the privileges and
immunities guaranteed to him as a United States citizen in violation of
Article IV, § 2 of, and the Fourteenth Amendment to, the Constitution (¶ 108).
For the reasons expressed in footnote 60 below, I consider these due process
and privileges and immunities claims abandoned.

-21-

Claims Against Defendant Lezoche

Defendant John R. Lezoche contends that plaintiff's remaining equal protection claim against him is barred by the applicable two-year statute of limitations.  For the reasons expressed below, I agree.

The parties agree that each cause of action in this matter is governed by a two-year statute of limitations.  In actions brought under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury, which accrues when plaintiff knew, or should have known, of the injury upon which its action is based.  Sameric Corporation of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1988).

In Pennsylvania, the statute of limitations for personal injury claims is two years.  42 Pa.C.S.A. § 5524.  Therefore, plaintiff's equal protection claim set forth in Count I is subject to a two-year statute of limitation.

Under the continuing wrong doctrine, which tolls the statute of limitations, a federal cause of action based on a defendant's continuing conduct is timely, provided that the last act of that continuing conduct is within the limitations period.[44]

---

[44]   This doctrine is also known as the continuing violations doctrine. See Lipschultz v. Logan Assistance Corporation, 50 Fed.Appx. 528, 530 n.1 (3d Cir. 2002).  In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is more than the occurrence of isolated

(Footnote 44 continued):

Here, the last affirmative act involving defendant Lezoche occurred on October 27, 2006, when he sent an inter-office memorandum to Bethlehem City Councilman Robert J. Donchez advising Councilman Donchez that the Bethlehem legal bureau was reviewing various matters relating to plaintiff's Property.[45] Accordingly, plaintiff had two years from that date, or until October 27, 2008, to initiate his suit against defendant Lezoche.

The original Complaint in this suit was filed on December 30, 2008, more than two months after plaintiff's deadline to file a lawsuit against defendant Lezoche.  Therefore, plaintiff's remaining equal protection claim against Mr. Lezoche is time-barred.

Plaintiff's claim against defendant Lezoche is based on an alleged pattern of harassment by defendant Lezoche commencing on April 2, 2002 when Mr. Lezoche wrote to plaintiff Tomino advising him that his appeal for special exception to increase the hours of operation of Mr. Tomino's delicatessen was denied (although plaintiff's request to expand to include a bathroom and storage was approved with the condition that there could be no

---

(<u>Continuation of footnote 44</u>):

or sporadic acts.  <u>United States v. Cowell</u>, 263 F.3d 286, 292 (3d Cir. 2001).

When determining whether the continuing wrong doctrine applies, courts consider three factors: subject matter, frequency, and whether the act had a degree of permanence which should trigger the plaintiff's awareness to assert his rights.  <u>Cowell</u>, 263 F.3d 292-293.  The degree of permanence is the most important of the factors.  <u>Id.</u>

[45]     Defendants' Undisputed Facts, ¶ 65, Exhibit AA.

sit-down eating at Tomino's Deli).[46]  As noted above, the last
affirmative act involving Mr. Lezoche occurred on October 27,
2006 when Mr. Lezoche advised Councilman Donchez that the City's
legal bureau was reviewing various matters relating to
plaintiff's Property.

As indicated in footnote 44, above, in order to toll
the statute of limitations under the continuing wrong, or
continuing violations, doctrine, a plaintiff must establish that
the defendant's conduct is more than the occurrence of isolated
or sporadic acts.  As noted in the Facts section of this Opinion,
above, in addition to Mr. Lezoche's initial and final acts of
alleged harassment, on April 2, 2002 and October 27, 2006,
respectively, his conduct during this period also included the
following actions:

- On November 23, 2003 defendant Lezoche issued
  a Cease and Desist Order to plaintiff
  regarding violations for after-hours
  deliveries and for installing a table and
  seating outside the delicatessen[47];

- At some point between August 6, 2004 and
  February 14, 2006, defendant Lezoche came to
  plaintiff's Property and advised plaintiff
  that expanded parking would require City
  approval[48];

- On February 14, 2006 defendant Lezoche wrote
  to plaintiff regarding the land development

---

[46]   Defendants' Undisputed Facts, ¶¶ 45-47, Exhibits J, K and L.

[47]   Defendants' Undisputed Facts, ¶ 50, Exhibit O.

[48]   Defendants' Undisputed Facts, ¶ 57; Exhibit S.

-24-

review necessary to expand parking. Defendant requested additional information from plaintiff and advised plaintiff that failure to respond in five days would result in issuance of a Cease and Desist Order[49];

- On May 24, 2006 defendant Lezoche advised plaintiff's counsel that no parking would be permitted until plaintiff obtained approval by requesting an appeal for a special exception, which appeal would have to be made in 30 days[50];

- On July 6, 2006 a Notice of Violation and a Cease and Desist Order was issued to plaintiff regarding his use of the rear yard as a parking lot without approval of the Board[51];

- On August 16, 2006 defendant Lezoche filed a Civil Complaint on behalf of the City against plaintiff regarding the July 6, 2006 Cease and Desist Order[52]; and

- On October 24, 2006 judgment on the Civil Complaint was entered in favor of plaintiff.[53]

Applying the factors enumerated in footnote 44, above, to determine whether the continuing wrong doctrine applies to toll the statute of limitations, I conclude that such repeated affirmative acts by defendant Lezoche between April 2, 2002 and October 26, 2006, if actionable, are considerably more than the occurrence of isolated or sporadic acts, and are of sufficient

---

[49]     Defendants' Undisputed Facts, ¶ 57; Exhibit S, T and U.

[50]     Defendants' Undisputed Facts, ¶ 59; Exhibit U.

[51]     Defendants' Undisputed Facts, ¶ 60; Exhibit V.

[52]     Defendants' Undisputed Facts, ¶ 61; Exhibit W.

[53]     Defendants' Undisputed Facts, ¶ 63; Exhibit Y.

frequency for the continuing wrong doctrine to toll the statute of limitations on plaintiff's claims until October 27, 2006, when the last affirmative act involving defendant Lezoche occurred.

Based upon the record produced by defendant Lezoche in support of this motion for summary judgment, the forgoing facts establish that plaintiff had until October 27, 2008 to commence this lawsuit within the applicable two-year statute of limitations period.  Because plaintiff's original Complaint was filed December 30, 2008, 64 days after the expiration of the statute of limitations, defendant Lezoche is entitled to summary judgment on this ground.

In other words, in accordance with the applicable standard of review enumerated above, defendant Lezoche has shown that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

Because defendant Lezoche has sustained his initial burden of demonstrating the absence of genuine issues of material fact, he is entitled to summary judgment unless plaintiff, as the non-movant can establish the existence of each element on which he bears the burden of proof; that is, that plaintiff filed his Complaint commencing this litigation within the statute of limitations.  Plaintiff cannot avert summary judgment by speculations, or by resting on the allegations in his pleadings.

Rather, in order to prevail, plaintiff must present competent evidence to toll the statute of limitations until at least December 30, 2006 in order for his Complaint to have been timely filed on December 30, 2008.  That is, the last act of defendant Lezoche evidencing a continuing practice of harassment must have tolled the statute of limitations sufficiently to render plaintiff's Complaint timely.  Sameric, 142 F.3d at 599.

For the following reasons, plaintiff has failed to present such competent evidence.

In paragraph 95 of plaintiff's Amended Complaint, plaintiff avers that on January 10, 2007 defendant Lezoche directed Mr. Malpedo, a housing inspector for the City, to transmit a Final Notice to Mr. Tomino, advising him of an abandoned vehicle parked on the Property and indicating that failure to remove the vehicle within 48 hours may result in citations being issued, ranging from $200.00 to $1,000.00 per day.  If plaintiff had established competent evidence of this fact, it would have tolled the statute of limitations until January 10, 2009, and thus rendered timely plaintiff's December 30, 2008 Complaint.

However, plaintiff cannot avert summary judgment by relying on this allegation in his pleadings.  He has not produced any evidence that defendant Lezoche directed Mr. Malpedo to issue the Final Notice.  In fact, during his deposition, Mr. Tomino

-27-

stated that he did not have any knowledge that defendant Lezoche ever directed Mr. Malpedo to issue the Final Notice or to harass plaintiff.[54]

Plaintiff did present evidence that he kept a journal of the City's repeated harassment towards him.  During his deposition, plaintiff alleged that such harassing conduct occurred as late as May 24, 2008 when he was cited by the City for allowing his weeds grow too high.[55]  If plaintiff had established competent evidence that defendant Lezoche was involved in this conduct, it would have tolled the statute of limitations until May 24, 2010, and thus rendered timely plaintiff's Complaint.

However, nothing in plaintiff's journal, nor his deposition testimony regarding the journal, provides any evidence that *defendant Lezoche* engaged in an affirmative act after 2006. Plaintiff began his journal on December 3, 2005 to document visitations by city workers and city officials.  Plaintiff indicates that defendant Lezoche was one of the city officials who stopped by the Property both before and after plaintiff began recording visits in his journal.[56]

---

[54]     Exhibit L, page 185.

[55]     N.T. Tomino Deposition, page 123; Defendants' Reply Exhibit C.

[56]     N.T. Tomino Deposition, page 123-125.

In addition, nothing in the journal indicates that defendant Lezoche came by the property after 2006.  Nor does plaintiff's deposition testimony indicate that defendant Lezoche engaged in any conduct directed towards plaintiff after 2005.[57]

Plaintiff's May 24, 2008 journal entry regarding his citation for excessive weeds does not mention defendant Lezoche.[58]  Moreover, the undisputed facts indicate that the May 24, 2008 Final Notice was issued by Scott Sterner of the Health Department.  Plaintiff has not alleged, nor provided any evidence, much less competent evidence, that defendant Lezoche directed Mr. Sterner to issue the citation.  Plaintiff cannot avert summary judgment by speculation.

Because plaintiff has failed to provide any evidence of an affirmative act by defendant Lezoche within the statute of limitations period, defendant Lezoche is entitled to summary judgment.  See Sameric, 142 F.3d at 599.  Accordingly, I grant defendants' motion for summary judgment with respect to plaintiff's remaining equal protection claim against defendant Lezoche.  Therefore I dismiss with prejudice plaintiff's claim in Count I of his Amended Complaint against defendant Lezoche.

---

[57]   N.T. Tomino Deposition, pages 123-125.

[58]   Defendants' Reply Brief, Exhibit C.

### Equal Protection

Next, in the alternative, I briefly address the merits of plaintiff's equal protection claim against defendant Lezoche, in the event that I am mistaken about my conclusion that the the statute of limitations bars plaintiff's lawsuit against defendant Lezoche.

The Fourteenth Amendment to the United States Constitution provides in part, that "No State shall...deny to any person within its jurisdiction the equal protection of the laws." U.S.Const.amend.XIV, § 1.

Defendant Lezoche contended that plaintiff had not presented any evidence of the requirements for an equal protection claim.  On the other hand, plaintiff did not argue that he had been treated unfairly based on his membership in a protected class.  Rather, his equal protection claim was based on a "class of one" theory.

In order to state a state an equal protection claim as a "class of one", a plaintiff must demonstrate that: (1) defendant treated him differently from others similarly situated; (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in treatment.  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

Persons are similarly situated under the Equal Protection Clause when they are alike "in all relevant aspects."

-30-

Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 203 (3d Cir. 2008).  Accordingly, plaintiff must identify similarly situated individuals who were treated differently and provide some factual support for such allegations.  Perano v. Township of Tilden, 2010 U.S.Dist. LEXIS 36781 at *31 (E.D.Pa. April 12, 2010) (Slomsky, J.).

Here, there is no evidence that defendant Lezoche treated Mr. Tomino differently from other similarly situated property owners.  Plaintiff contended that a reasonable person could conclude that defendants' treatment of Mr. Tomino "was not the norm for a government actor and thus only exhibited upon plaintiff."[59]  However, plaintiff did not identify any similarly situated individuals, nor provide any factual support for his contention that similarly situated individuals were treated differently than Mr. Tomino.

Accordingly, even if plaintiff's claims against defendant Lezoche were not barred by the statute of limitations, I would have granted summary judgment to defendant Lezoche on plaintiff's equal protection claim because plaintiff did not produce sufficient evidence to show that defendant Lezoche treated him differently from others similarly situated.[60]

---

[59]    Memorandum of Law, page 3, attached to Plaintiff's Answer to Motion of Defendants for Summary Judgment.

[60]    The Amended Complaint also makes brief, conclusory allegations,

(Footnote 60 continued):

-31-

<u>Claims Against Defendant City of Bethlehem</u>

Defendants contended that in a section 1983 action, the City of Bethlehem could not be held liable without a finding that defendant Lezoche was liable.  Defendants relied upon on a decision of the United States Court of Appeals for the Third Circuit, <u>Wayne v. Borough of West Chester, Pennsylvania</u>, 891 F.2d 458, 467   (3d Cir. 1989).

In <u>Wayne</u> the Court held that a municipality "may be liable under section 1983 only if it can be shown that its employees violated a plaintiff's civil rights as a result of a municipal policy or practice."  Accordingly, a municipality "cannot be vicariously liable under <u>Monell</u> unless one of [its] employees is primarily liable under section 1983 itself."  <u>Wayne</u>,

---

(<u>Continuation of footnote 60</u>):

(without any accompanying factual averments) that defendants violated plaintiff's procedural due process rights under the Fourteenth Amendment to the United States Constitution (Plaintiff's Amended Complaint, ¶ 103) and that defendants deprived plaintiff of the privileges and immunities guaranteed to him as a citizen of the United States pursuant to Article IV, section 2 of, and the Fourteenth Amendment to, the United States Constitution (¶ 108).

My March 31, 2010 Order and Opinion dismissed plaintiff's procedural due process claims without prejudice to replead those claims with facts supporting an inference that defendants deprived him of a property benefit without due process of law.  Although plaintiff's Amended Complaint did not remove the allegation that defendants violated his procedural due process rights, plaintiff did not provide any factual support for the allegation, and neither party briefed the issue of procedural due process in connection with defendants' motion to dismiss the Amended Complaint or defendants' motion for summary judgment.

Additionally, neither party briefed or referred to plaintiff's allegation that defendants deprived plaintiff of the privileges and immunities guaranteed by the United States Constitution in connection with defendants' motion to dismiss the original complaint, motion to dismiss the Amended Complaint, or motion for summary judgment.  Accordingly, I consider these due process and privileges and immunities claims abandoned.

891 F.2d at 467 <u>citing</u> <u>Monell v. New York City Department of</u>
<u>Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611
(1978).

Defendants contended that because defendant Lezoche was
not liable to plaintiff on any claim, the City was entitled to
summary judgment as a matter of law.  For the following reasons,
I agreed in part and disagreed in part.

Notwithstanding the language of the <u>Wayne</u> Court, in
<u>Fagan v. The City of Vineland</u>, 22 F.3d 1283, 1294 (3d Cir. 1994)
the United States Court of Appeals for the Third Circuit held
that "a municipality can be liable under section 1983 and the
Fourteenth Amendment...even if no individual officer...violated
the Constitution."  In <u>Fagan</u>, independent municipal liability was
found to exist because the plaintiff brought separate,
independent claims against the municipality and its officers, and
each were based on different theories and required different
proof.  <u>Id.</u> at 1292.

Here, plaintiff has brought equal protection claims
against both defendant Lezoche and the City.  Although
plaintiff's remaining claim against the City, arises in part from
the conduct of defendant Lezoche, plaintiff also alleges that the
City caused plaintiff's injuries through an official policy or
custom of harassment which extended beyond the conduct of
defendant Lezoche.  Accordingly, I conclude that the absence of

liability concerning defendant Lezoche, does not automatically preclude liability on the part of the City.

However, in order for liability to attach to a public entity, plaintiff must establish that the constitutional violation resulted from the execution of an official policy or custom promulgated by municipal lawmakers or policymaking officials.  Maisonet v. City of Philadelphia, 2007 U.S.Dist. LEXIS 33401 at *7 (E.D.Pa. May 7, 2007) (McLaughlin, J.) citing Monell, 436 U.S. at 694-95.

A policy can be demonstrated by showing that a decision-maker possessing final authority to set municipal policy with respect to the challenged action, issues an official proclamation, policy or edict.  Maisonet, 2007 U.S.Dist. LEXIS 33401 at *8.  A custom can be demonstrated by showing that a course of conduct, though not authorized by law, is so permanent and well-settled as to virtually constitute law.  Id.  Typically, this requires proof of a pattern of underlying constitutional violations.  Carswell v. Homestead, 381 F.3d 235 (3d Cir. 2004).

Here, as described above, defendant Lezoche's conduct towards plaintiff was not violative of the equal protection clause because plaintiff has not provided sufficient evidence that defendant Lezoche treated plaintiff differently from other similarly situated individuals or businesses.  Therefore, the conduct of defendant Lezoche cannot be the basis for establishing

-34-

that the City had a custom or official policy of violating
plaintiff's constitutional rights.

Plaintiff contends that because defendant Lezoche
passed along a complaint about an abandoned vehicle on
Mr. Tomino's property to a city housing supervisor, this
demonstrates that the City had a custom of consistently
prosecuting Mr. Tomino for every minor violation.

However, complaints concerning an abandoned vehicle are
housing issues rather than zoning issues.[61]   Contrary to
plaintiff's contention, no reasonable inference of a custom of
prosecuting Mr. Tomino can be drawn from the fact that defendant
Lezoche forwarded a complaint to the appropriate department
within the City.   Moreover, plaintiff has not provided any
evidence that other persons' complaints were handled differently.
Therefore, plaintiff has not shown that the City handled the
complaint against Mr. Tomino differently than other complaints
against similarly situated individuals.

Nor has plaintiff established that in other instances
city officials treated Mr. Tomino differently than they treated
other similarly situated individuals or entities.   Accordingly,
plaintiff has not provided sufficient evidence of any equal
protection constitutional violations which would evidence an
official policy or custom of the City.

---

[61]      See N.T. Lezoche Deposition, pages 125-126.

Although plaintiff alleged that Elias' Market received favorable treatment from the City and was permitted to expand and obtain set-back variances, Mr. Tomino described Elias' Market as a farmer's market in a R-R Zoning District (Rural Residential). Therefore, Elias' Market, which was a farmer's market in a rural residential district, was not similarly situated to Tomino's Deli, a delicatessen in a high-density residential district.  See Perano, 2010 U.S.Dist. LEXIS 36781 at *31.

In sum, plaintiff had neither shown that a decision-maker with final authority to set municipal policy with respect to the challenged action, issued an official proclamation, policy or edict.  Nor did plaintiff demonstrate proof of a pattern of underlying constitutional violations sufficient to show that a course of conduct, though not authorized by law, was so permanent and well-settled as to virtually constitute law, which would have been necessary to establish a municipal custom.

Therefore, I granted the motion for summary judgment of defendant City of Bethlehem.  Accordingly, judgment was entered in favor of defendant City of Bethlehem and against plaintiff William Tomino, Individually and trading as Tomino's Deli, on plaintiff's Amended Complaint.

<u>Qualified Immunity</u>

Defendants contended that defendant Lezoche was entitled to qualified immunity because he was acting in his

-36-

capacity as a zoning officer for the City of Bethlehem.  They
also contended that if any violation of plaintiff's rights had
occurred, the right was not clearly established.  Plaintiff
contended that defendant Lezoche was not entitled to qualified
immunity because filing a baseless civil action against plaintiff
violated clearly established law.

Qualified immunity exists to protect officials
exercising good faith in their discretionary duties from the
unreasonable burdens of litigation.  Any potential good from
suits against government officials for discretionary acts is
outweighed by the chilling effect such litigation would have on
legitimate government activities.  See Butz v. Economou,
438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895, 916
(1978); Karnes v. Skrutski, 62 F.3d 485, 499 n.13 (3d Cir. 1995).

However, because I granted summary judgment in favor of
both defendants and against plaintiff, the qualified immunity
contentions of the parties were moot, and I did not decide them.
Rather, I dismissed defendant Lezoche's claim of qualified
immunity as moot.

## Punitive Damages

Defendants contended that plaintiff's claims for
punitive damages should have been dismissed because plaintiff did
not establish that the actions of defendants rose to the level of
wanton, willful or reckless conduct.  Plaintiff did not respond

to defendants' contention that plaintiff's punitive damages claim should have been dismissed.

However, because I granted summary judgment in favor of both defendants, plaintiff was not entitled to punitive damages; defendants' contentions concerning punitive damages were moot; and I did not decide them.  Instead I dismissed plaintiff's claim for punitive damages as moot.

<u>CONCLUSION</u>

For all the foregoing reasons, I granted defendants motion for summary judgment.  Accordingly, judgment was entered in favor of defendant City of Bethlehem and against plaintiff William Tomino.  In addition, plaintiff's Amended Complaint against defendant John R. Lezoche was dismissed with prejudice.